UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                               Case No. 8:12-CR-426-T-27TGW

PRESTON WILBUR
_____/

## STATEMENT OF REASONS AND FACTS
## JUSTIFYING VARIANCE BELOW ADVISORY GUIDELINES

During the sentencing hearing, this Court explained its reasons for the sentence and its finding that a variance below the advisory Guidelines range was appropriate. Defendant was sentenced to 10 years in prison, followed by 20 years of supervised release. The Government objected to the sentence on the ground of substantive reasonableness. This Statement of Reasons is intended to memorialize and elaborate on the announced reasons for the variance, and to address the Government's objection.

Let there be no misunderstanding. This is a serious case of possession and distribution of child pornography. *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008) ("Indeed, we have typically treated child sex offenses as serious crimes . . ."). Defendant admits to having downloaded more than 8,000 videos and approximately 300,000 images depicting child pornography, a shocking number.

It cannot be disputed that the viewing and distribution of child pornography perpetuates the victimization of the children in the videos and images. As demonstrated by the compelling victim impact statements submitted with the Presentence Investigation Report, the emotional trauma experienced by these children is likely to last a lifetime, depriving them not only of their childhood

innocence, but rendering ordinary relationships with family and friends exceedingly difficult, if not impossible. Since these videos and images are readily available on the Internet, these children are consumed with mistrust and live in fear that someone will recognize them. It is inconceivable that any child should have to endure such trauma.

Those who obtain, possess and distribute child pornography should receive sentences which reflect the seriousness of their offense. An appropriate sentence is determined, however, not just by the nature of the offense but by considering additional statutory factors, including the history and characteristics of the defendant, the need to promote respect for the law, deter similar conduct, protect the public, and provide the defendant with necessary education, training, medical care or other correctional treatment. 18 U.S.C. § 3553(a). In the end, the sentence should be just, and sufficient but not greater than necessary to satisfy these statutory purposes.

Defendant's Guidelines sentence range is 210 to 240 months, the high end being the statutory maximum penalty. That range is driven in part by the number of videos and images he downloaded to his computers. Because of that, his base offense level was enhanced by five levels (PSR, ¶ 26). Notwithstanding the massive volume of images and videos he downloaded, Defendant urged that a five year sentence would satisfy the sentencing factors set forth in § 3553(a). The Government urged a guidelines sentence. Both recommendations were rejected as inconsistent with the § 3553(a) factors.

In support of his requested variance, Defendant argued that a Guidelines application based in part on the number of images downloaded from the Internet does not accurately reflect his culpability (Dkt. 22, p. 18):

> As the Probation Officer noted in the Presentence Investigation Report, one thing that arguably differentiates Mr. Wilbur's conduct from that of otherwise similar defendants is the large number of images and videos found in his computers.

2

However, in the age of computer trading and storage of images by way of "peer-to-peer" software such as Gigatribe, the number of images possessed bears little if any relationship with the defendant's culpability. Rather than reflecting on his culpability, the number of images possessed by Mr. Wilbur in particular is a reflection more on the interaction of his lifestyle with the sexual impulsivity/compulsivity detailed by Dr. Saks. (Letter of Dr. Saks at 3.) By his own account, Mr. Wilbur was at home, alone, in front of his computer nearly 24 hours per day. Every time he would look at pornography, one of the results of the viewing would be the "temporary 'high'" described by Dr. Saks, and the another result would the compulsion to get more pornography to view. Once the compulsion took hold, Mr. Wilbur, at home, alone, working at a computer, had nothing to keep it at bay. Using Gigatribe, he was able to download massive quantities of images, merely by copying and pasting, and allowing the files to download in the background while he busied himself with other things. Even the factual basis within the plea agreement suggests that Mr. Wilbur's collection more signified his adeptness with computers than his actual viewing habits. As noted at p. 23, "Of the 8,390 video files and 283,967 image files submitted to NCMEC, it took NCMEC six months just to review and identify the images submitted." (Emphasis added.)

Mr. Wilbur paid for a Gigatribe Ultimate membership, and with that membership, he was able to use the software's "multisource downloads" feature to get an unlimited number of simultaneous downloads. Gigatribe Ultimate features page screenshot, attached as Exhibit E. Mr. Wilbur took advantage of these features extensively to download entirely more images and videos than he could possibly view.

In short, the number of images involved in this case does not outweigh the other 3553(a) factors to justify a sentence greater than the statutory mandatory minimum term of sixty months.

The undersigned has no quarrel with how the Guidelines apply in this case. Notwithstanding, for purposes of § 3553(a), Defendant's contention that the number of images he physically downloaded through the peer-to-peer file sharing software is not reflective of his actual viewing habits is a reasonable one, and to that extent a consideration of the § 3553(a) factors conflicts with the Guidelines range.

By way of explanation, in ¶ 26 of the PSR, a five level enhancement was applied because the images Defendant downloaded through the peer-to-peer software Gigatribe "involved at least 600 or more images . . ." When the video files are converted to their image equivalency, "the total count

is equated to 929,175 images." At first glance, the number of images downloaded by this Defendant is shocking.

It became apparent during the sentencing hearing, however, that these numbers, although accurately representing the videos and images physically downloaded by Defendant, were not necessarily representative of the number he intended to download and view. The case agent and prosecutor explained that a single file download could include hundreds of images and videos which may not have been apparent to Defendant when he began the download. This is consistent with Defendant's contention that "Using Gigatribe, he was able to download massive quantities of images, merely by copying and pasting, and *allowing the files to download in the background* while he busied himself with other things." (emphasis added). Regardless, the prosecutor correctly urged that Defendant is accountable for the videos and images he actually downloaded, whether intended or not.

While Defendant is certainly accountable, for purposes of the Guidelines, for all of the child pornography he possessed and distributed, he makes a persuasive argument that the number of videos and images found on his computers artificially enhances his culpability. The advisory Guidelines must therefore be weighed against all of the § 3553(a) factors to arrive at a just sentence, including the "nature and circumstances of the offense."

After weighing the statutory factors in § 3553(a) against the advisory Guidelines, the Court finds that a Guidelines sentence is greater than necessary to achieve the statutory purposes of sentencing. Considering the actual offense conduct, Defendant's compulsiveness, age, health, lack of criminal history, personal characteristics, and his post offense efforts to address his criminal behavior and begin the process of rehabilitation, a sentencing variance is appropriate. The variance is NOT, however, a policy-based variance.

In support of his argument under § 3553(a), Defendant submitted a thorough and well reasoned sentencing memorandum, citing various expert and legal authorities (Dkt. 22). Defendant submitted numerous letters of support urging leniency. One was written by his pastor with whom he confided. Two were from college friends who have known him since the early 1980's. Both are mothers and fully aware of the charge to which he pleaded guilty. Notwithstanding, they asked for leniency, expressing their opinions that what he did was "out of character."

Two of Defendant's co-workers at CIGNA, one of whom was Defendant's supervisor, wrote letters requesting leniency, attested to his integrity, professionalism, and achievements. Another individual who has known Defendant since high school also opined that the offense "is out of character." A neighbor of Defendant's elderly mother and now deceased father who has known Defendant since "about 1980" described Defendant's "caring, hard working life, responsible attitude" and described him as "a good citizen" until "his problems."

These letters describe a individual who, unlike most defendants charged with similar offenses, enjoys the continued support, respect and admiration of his professional colleagues, friends, those who know him best. It would have been understandable for them to turn their backs on Defendant. Indeed, it took courage to support someone charged with distribution of child pornography, lending credence to their evaluations of his character and what they considered aberrant behavior.

Defendant submitted his own allocution, orally and in writing. One passage in his letter is compelling:

> During this time, I rationalized that I was not hurting anyone, but fully realize now that the act of sharing these files was hurting people and every day I deal with the guilt and shame of unintentionally hurting people that were innocent. With this all said, I am accountable for my addiction and my actions.

Defendant's allocution is consistent with the evaluations of his medical professionals, from which it can reasonably be inferred that Defendant presents a low risk of recidivism.

Defendant began treating with Dr. McClane shortly after the search warrant was executed. He diagnosed Defendant with Major Depression, Anxiety Disorder, and Internet Sexual Addiction. Dr. Helm, a board certified psychiatrist, began treating Defendant in July 2012 after Defendant was referred to him by Dr. McClane, who had retired. Dr. Helm observes that Defendant "never had any interest in acting on his fantasies," "never attempted to contact children or to arrange being able to meet with children," and "since his arrest, Preston has had no further involvement with any pornographic materials."

Dr. Helm reports: "I have seen Preston cry in describing his realization that purchasing and viewing the child pornography helps to create an environment in which other children may be victimized and realizing that children who have been victimized often continue to feel victimized knowing that their pictures are 'out there' and able to be viewed again and again." Dr. Helm opines that Defendant "would never have attempted to make contact with children to act on his sexual fantasies." He describes Defendant as a "thoughtful individual who is clearly remorseful for his behavior."

Dr. Bonnie Saks, a forensic psychiatrist, conducted a psychosexual evaluation of Defendant. Dr. Saks has worked with sexually compulsive individuals for more than 30 years. She is published on the topic and is a past President of the Society of Sex Therapy and Research. She teaches medical and psychiatry students at USF Medical School about sexual behavior, including sexual compulsivity, which she refers to as "Sex Addiction."

Dr. Saks describes Defendant as having "more insight and awareness of consequences than he did when he was giving in more to his impulsive/compulsive sexual use of the internet." She

acknowledges that he has established "more social support and therapeutic connection with Dr. Helm, his minister, church and volunteer group," and opines that he "may not regress to Internet sexually compulsive behavior" if he continues with that. She recommends continued therapy and bluntly opines that "[h]e is not a threat to children or adolescents."

It is apparent that Defendant has begun the process of recovering from his addiction by seeking professional help. In addition to treating with medical professionals, he confided with his pastor, divulged his conduct to his parents and close friends, and became involved in his church. Through treatment, he gained a new appreciation for the motivations behind his actions. His efforts to address his criminal conduct reflect a sincere attempt to rehabilitate himself.

Importantly, there is no indication in this record, or from his medical evaluations, that Defendant has a propensity to repeat his offense behavior or to act out on his sexual fantasies. He has not been diagnosed as a pedophile. While no one can predict with certainty whether a defendant will re-offend, there is support for the argument that this Defendant will not, based on the informed opinions of the two physicians who treated and evaluated him (See Dkt. 22, p. 14).

Certainly, spending 10 years in a federal prison should be a sufficient deterrent to one who has never been arrested before. As a practical matter, whether *any* sentence imposed in this case will deter others is speculative at best, considering the compulsive nature of the offense. And a 10 year sentence will promote respect for the law.

Defendant presents as a sincerely remorseful individual who fully appreciates the gravity of his offense, the harm occasioned on the children who have been victimized, and the consequences of re-offending. He is 46 years old, has lost his career with CIGNA, and will be approaching his mid-fifty's when released from custody. He is in poor health and has expressed suicidal ideation as a result of his offense. The lengthy period of supervised release and the special conditions of

supervision insure that he will be closely monitored, counseled and treated for his addiction, and closely supervised after he is released until he is in his mid-seventies.

Only after careful and deliberate consideration of the advisory guideline range and the other considerations in 18 U.S.C. § 3553(a) did this Court arrive at a sentence which it believes to be reasonable and just punishment. Ten years in federal prison is "just punishment" for a 46 year old man with no prior criminal arrests. Twenty years of federal supervised release adequately reflects the seriousness of the offense. The public is protected as this Defendant will be under constant scrutiny for thirty years.

### Substantive reasonableness

A sentence must be procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38 (2007). The parties agreed that the Guidelines are correctly applied. The Government's objection to the 10 year sentence was based solely on substantive reasonableness.

The substantive reasonableness of a sentence is considered in light of the § 3553(a) factors. *United States v. Valnor*, 451 F.3d 744, 750 (11th Cir. 2006). Where a sentence varies from the advisory guidelines range, the chosen sentence must be adequately explained, including the deviation from the guidelines range. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008).

The reasons for the sentence imposed were outlined during the sentencing hearing, most of which related to Defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Those characteristics were weighed against the "nature and circumstances of the offense" *See id.* A substantial prison sentence has been imposed together with a lengthy period of supervised release, providing a sufficient mechanism to monitor Defendant well into the future and "thus protect the public from any future crime, as contemplated by 18 U.S.C. § 3553(a)(2)(C)." *United States v. Pugh*, 515 F.3d at 1202.

Lower sentences for similar offenses have been upheld in this Circuit. *See United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006)(72 month sentence reasonable for distribution of child pornography, where defendant possessed more than 300 images, distributed some images and failed to attend his scheduled plea hearing, where guidelines range was 151-188 months); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007)(84 month sentence reasonable for distribution of child pornography where guidelines range was 151-188 months). And comparatively longer sentences for similar conduct have been upheld. *United States v. Demont*, 283 Fed. Appx. 768 (11th Cir. 2008)(169 month guidelines sentence reasonable for defendant who possessed approximately 100 videos and 350 images).

In sum, all of the considerations lead this Court to conclude, notwithstanding the nature of the offense, that a 10 year sentence followed by 20 years of supervised release adequately reflects the seriousness of the offense, provides appropriate and just punishment to this Defendant, promotes respect for the law, and adequately protects the public.

_____
JAMES D. WHITTEMORE
United States District Judge

Dated: March 7, 2013